IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CR. NO. 2:25-CR-408-BL-SMD |
| | ) | |
| CORTEZ JENKINS | ) | |
| | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

**I.    INTRODUCTION**

Defendant Cortez Jenkins ("Jenkins") is charged with controlled substances conspiracy in violation of 21 U.S.C. § 846(a)(1); possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 942(c)(1)(A)(i); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Indictment (Doc. 1).

These charges arise from a traffic stop in Montgomery, Alabama, during which officers discovered two bags of drugs in Jenkins's vehicle. Jenkins argues that the initial traffic stop and subsequent search were unlawful and therefore moves to suppress evidence seized from the vehicle and all other evidence subsequently obtained as fruit of the poisonous tree. Mot. (Docs. 253, 292). The undersigned held an evidentiary hearing on January 28, 2026. For the following reasons, the undersigned recommends that Jenkins's motion be denied.

## II.    FINDINGS OF FACT

U.S. Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Tyler Curlee ("TFO Curlee"), Montgomery Police Department ("MPD") Officer D. Huneycutt ("Officer Huneycutt"), and Alabama Law Enforcement Agency ("ALEA") Senior Special Agent Mike Mashburn ("SSA Mashburn") all testified at the hearing. These facts are derived from their testimonies and body camera footage presented at the hearing Tr. (Doc. 310); GX-1; GX-2.

On August 29, 2024, while conducting surveillance, TFO Curlee observed what appeared to be a hand-to-hand drug transaction between the subject of his surveillance and the driver of a white Infiniti. Tr. (Doc. 310) pp. 15-17. After observing the transaction, TFO Curlee followed the white Infiniti and noticed that it did not have a proper license plate but instead had a paper dealership "drive off" tag. *Id.* at 17. TFO Curlee then contacted Officer Huneycutt and SSA Mashburn to come to the area to conduct a traffic stop of the vehicle and informed them that the vehicle had a paper tag. *Id.* at 18. The paper tag did not display an expiration date or a tag number. *Id.* at 32.

Officer Huneycutt conducted a traffic stop of the vehicle and identified the driver as Cortez Jenkins. *Id.* at 30. Officer Huneycutt informed Jenkins that the reason for the stop was because Jenkins did not have a tag on his vehicle. GX-1 at 01:42. Jenkins produced the metal tag for the vehicle from inside the passenger compartment but advised that "it was not valid." *Id.* at 2:00. Officer Huneycutt asked Jenkins to exit the vehicle and asked if he could conduct a pat down. *Id.* at 2:13-26. Jenkins complied and informed Officer

Huneycutt that he had a weapon. *Id.* at 02:37. Officer Huneycutt removed a firearm from Jenkins's waistband and instructed Jenkins to stand at the front of his police vehicle. *Id.* at 02:40.

Around this time, SSA Mashburn arrived at the scene and asked Jenkins if he bought the car recently. GX-2 at 00:58. Jenkins replied, "Nah I been had it." *Id.* at 01:00. Officer Huneycutt informed SSA Mashburn that Jenkins had a gun on his person. *Id.* at 01:47. SSA Mashburn then asked Jenkins if there were any other weapons in the vehicle, to which Jenkins replied: "No." *Id.* at 01:53. SSA Mashburn asked: "Nothing at all?" *Id.* at 01:55. Jenkins replied: "No." *Id.* at 01:56. SSA Mashburn then asked: "Do you mind if I check real quick?" *Id.* at 01:57. Jenkins consented to the search. *Id.* at 01:58.

SSA Mashburn began his search in the driver area of the vehicle, where he observed what appeared to be marijuana "shake[1]" in the floor. Tr. (Doc. 310) p. 60. SSA Mashburn continued his search of the vehicle and found a small amount of powder cocaine in a pouch inside a lunchbox in the back seat. *Id.* at 65. SSA Mashburn also found a clear bag containing what appeared to be approximately one ounce of crystal meth inside a backpack in the trunk of the vehicle. *Id.* at 64-65. After finding the meth, SSA Mashburn stopped his search and instructed Jenkins to put his hands behind his back. GX-2 at 18:13. After another officer put Jenkins in handcuffs, SSA Mashburn contacted TFO Curlee. Tr. (Doc. 310) p. 65.

## III.   LEGAL STANDARD

---

[1] Shake is the small pieces or crumbs of cannabis flower that fall off the bud when handling it.

3

The Fourth Amendment protects individuals from unreasonable search and seizure. *See* U.S. Const. amend. IV. When a defendant moves "to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (emphasis in original). To sustain this burden, the "Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment." *Id.*

## IV.   DISCUSSION

Jenkins argues that the search was unlawful because there was no legitimate basis for the initial traffic stop and because the search of the vehicle exceeded the scope of his consent. Mot. (Docs. 253, 292). The Government argues (1) Jenkins's paper dealership "drive off" tag created probable cause for the traffic stop; (2) the search of Jenkins's vehicle did not exceed the scope of consent; (3) during the search for weapons, probable cause was developed to search for drugs; and (4) officers had probable cause to search the vehicle for drugs prior to obtaining consent. Gov't.'s Resp. (Doc. 260) p. 3; (Doc. 300) p. 1.

### A.  Officer Huneycutt had probable cause to conduct a traffic stop.

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648 (1979)). "[A] traffic stop is a constitutional detention if it is justified by reasonable suspicion under *Terry* or probable cause to believe a traffic violation has occurred under

*Whren v. United States*[.]" *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). Under Alabama law, vehicles must have a license tag or license plate as prescribed and furnished by the Department of Revenue attached and plainly visible at all times. Ala. Code § 32-6-51. Alabama law allows designated agents to issue temporary license tags that must clearly display "the date of issuance and expiration, the make and vehicle identification number of the motor vehicle for which issued, and other information as the department shall require." Ala. Code § 32-6-216.

It is undisputed that Jenkins was driving with a paper tag at the time of the traffic stop. Mot. (Doc. 253) p. 1; Gov't.'s Resp. (Doc. 260) p. 2.  Jenkins's paper tag was sufficient to justify the initial stop. *See United States v. Smith*, 164 F. App'x 825, 827-29 (11th Cir. 2006) (affirming the district court's finding that a paper dealership tag creates probable cause to stop the vehicle for failure to display a license tag); *United States v. DeJesus*, 2009 WL 3488690, at *6 (M.D. Ala. Oct. 22, 2009) ("[A] finding of reasonable cause for a stop is constant where a temporary tag is clearly noncompliant with state law, or where a stop is necessary for the officer to determine validity.").

**B. SSA Mashburn's search during the traffic stop was reasonable under the Fourth Amendment.**

SSA Mashburn's search of the vehicle was reasonable under the Fourth Amendment because Jenkins consented to a search of his vehicle for weapons and because during the search for weapons, probable cause developed to search for drugs.

**1. SSA Mashburn's search of the backpack did not exceed the scope of consent.**

5

Jenkins does not challenge the validity of his consent. Instead, he argues only that the search of his vehicle exceeded the scope of consent given. Mot. (Doc. 292) p. 1. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (internal citations omitted). "A general consent to search for specific items includes consent to search any compartment or container that might reasonably contain those items." *United States v. Zapata*, 180 F. 1237, 1243 (11th Cir. 1999).

Here, it is undisputed that Jenkins consented to a search of his vehicle for weapons. GX-2 at 01:57. SSA Mashburn subsequently discovered methamphetamine inside a backpack in the trunk of Jenkins's vehicle. Tr. (Doc. 310) p. 65. Because SSA Mashburn could reasonably have found a weapon in the backpack, he did not exceed the scope of Jenkins's consent when he searched the backpack. Thus, SSA Mashburn's search of the backpack was reasonable and the evidence seized pursuant to the search of the backpack should not be suppressed.

**2. During the search for weapons, probable cause developed to search the vehicle for drugs.**

Under the automobile exception, officers can search any container in an operational car without a warrant if they have probable cause to believe the container holds evidence of a crime. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing *California v. Acevedo*, 500 U.S. 565, 579-80 (1991)). The probable cause standard is met when the totality of the circumstances could lead an officer to conclude that "there is a fair

probability" that the vehicle contains evidence of a crime. *United States v. Tamari*, 454 F.3d 1259, 1262 (11th Cir. 2006). This exception allows searches for any suspected crime and is not limited to the offense for which the vehicle was stopped, or the driver arrested. *Arizona v. Gant*, 556 332, 347 (2009) (explaining the holding in *United States v. Ross*, 456 U.S. 798, 820-821 (1982)). It also permits officers to search any part of the vehicle where evidence could be hidden and is not limited to the passenger compartment. *Id.*

Upon opening the driver's door to begin his search for weapons, SSA Mashburn observed marijuana shake in plain view on the floorboard. Tr. (Doc. 310) p. 60. This observation is sufficient to establish probable cause to search the vehicle for drugs. *See United States v. Powell*, 2024 WL 3957358, at *4 (N.D. Fla. Aug. 8, 2024) (citing *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009)). Because SSA Mashburn could reasonably have found drugs in the zipper pouch inside of the lunchbox, his search of the zipper pouch was reasonable. The shake also provides an alternative justification for the search of the backpack in the trunk. Thus, the cocaine seized pursuant to the search of the zipper pouch should not be suppressed. Because the marijuana shake is sufficient to establish probable cause to search the vehicle for drugs, the undersigned need not address alternate theories of consent or probable cause.

## V.    CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Jenkins's motion to suppress (Doc. 253) and supplement thereto (Doc. 292) be DENIED.  It is further

ORDERED that the parties shall file any objections to this Recommendation on or before March 16, 2026. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 2nd day of March, 2026.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE