IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cr-00408-BL-SMD |
| | ) | |
| CORTEZ JENKINS | ) | |
| | ) | |

## **ORDER**

Defendant Cortez Jenkins faces an indictment charging him with conspiracy to distribute controlled substances, possession with intent to distribute five grams or more of methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.  (Doc. 1).  He has filed a motion to suppress, (doc. 253), and a supplement to it, (doc. 292), in which he seeks suppression of "evidence seized during the traffic stop and search of his vehicle" and "any fruits of that evidence or statements made because of the unlawful seizure."  (Docs. 253, 292).  The Defendant argues that the "Montgomery County Police Department violated [his] Fourth Amendment right when he was stopped for a paper tag" because "there was no legitimate basis for the traffic stop." (Doc. 253 at 5).  He also argues that the search of his vehicle exceeded the scope of his consent to search his vehicle for weapons.  (Doc. 292).

This case is before the court on the recommendation of the United States Magistrate Judge that the Defendant's motion to suppress be denied. (Doc. 348). The Defendant filed objections to the recommendation. (Doc. 376).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(10(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court must "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" and "give *fresh consideration* to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (emphasis in *Raddatz*) (internal quotations and citations omitted).

Notably, the Defendant does not object to the Magagistrate Judge's findings of fact or legal standards applied to resolve the motion to suppress. (Doc. 376 at 1). The Defendant also seems to abandon his argument that the initial stop of his vehicle violated the Fourth Amendment. The Defendant asserts that "Officer Huneycutt had the right to make the initial stop to investigate whether the paper tag had expired, but once Huneycutt determined the tag was valid, the stop should have ended, and

defendant should have been released without a search of his vehicle." (Doc. 376 at 2).[1]  He argues that because Officer Huneycutt testified at the state preliminary hearing on related charges that "there was nothing illegal about the paper tag," the Defendant "should have been released after a brief investigation that determined the tag was valid." (Doc. 376 at 3-4).  The Defendant asserts that the "stop was extended to allow the search of the vehicle without probable cause." (Doc. 376 at 4).  The Defendant's arguments are without merit.

The Defendant seems to argue that once Officer Huneycutt determined that the paper tag was a valid paper tag from a dealer, and the Defendant produced a metal tag for the vehicle, the traffic stop should have halted at that point.  Although the paper tag itself may have appeared to be valid, the Defendant admitted that the metal tag he produced for the car was "not valid."  Thus, it was reasonable for Officer Huneycutt to investigate further.  At that point, Officer Huneycutt reasonably removed the Defendant from the vehicle, removed the Defendant's weapon, had the Defendant stand in front of the patrol car, and walked back to his patrol car to "run a query on [the Defendant], the vehicle, and the firearm." (*See* Doc. 306-11 at 2).

Only about three minutes elapsed from the time Officer Huneycutt stopped the Defendant's vehicle, and the Defendant produced the metal tag for the vehicle

---

[1] Although the Defendant did not make this specific argument in his motion to suppress or his supplemental motion, he made this argument during the evidentiary hearing on the motion to suppress.  (Doc. 310 at 102-103).

that was "not valid," until the Defendant consented to the search of his vehicle for weapons.   (Docs. 306-3, 306-4).  In fact, the Defendant consented to the search of his vehicle for weapons while Officer Huneycutt was in his patrol car still conducting his investigation regarding the traffic stop.  (Doc. 306-3; Doc. 306-11 at 2).[2]   As such, any delay in the traffic stop after the first three minutes related to the Defendant's voluntary consent to search his vehicle for weapons.[3]   The Court OVERRULES the Defendant's objections regarding this issue.

Regarding the scope of his consent to search, the Defendant argues that the "extensive search for drugs exceeded the limited consent given by defendant" to search the vehicle for weapons. (Doc. 376 at 13).  He asserts that the Defendant "did not give consent to search for drugs or to search the trunk." (Doc. 376 at 13).  The Defendant argues that the "limited consent only went to a quick check of the vehicle for weapons."  (Doc. 376 at 13).  SSA Mashburn testified that he understood the

---

[2]  Moreover, Officer Huneycutt testified that when he "ran everything in the system," he discovered that the Defendant had a traffic failure to appear warrant outstanding. (Doc. 306 at 2).

[3]  The Defendant also argues that Officer "Huneycutt did not have 'collective knowledge' with a reasonable foundation" to make a traffic stop of defendant, other than a possible tag violation, thus there was no reason to extend the stop that allowed for a search and seizure to occur." (Doc. 376 at 7).  Because the Defendant agrees that the initial stop was valid, and the Defendant's voluntary consent to the search of his vehicle for weapons extended the traffic stop, the court does not reach the issue of whether Officer Huneycutt had collective knowledge of TFO Curlee's observation of the Defendant's vehicle in what appeared to be a hand-to-hand drug transaction that would give rise to probable cause to stop the Defendant's vehicle and search it for drugs.

Defendant's consent to include searching for anything illegal, including drugs, which is how he conducted the search.  (Doc. 310 at 75).

The Defendant's objections related to the scope of his consent to search his vehicle for weapons lack merit.  No doubt, "[a]n officer conducting a routine traffic stop may request consent to search the vehicle." *United States v. Harris*, 526 F.3d 1334, 1339 (11th Cir. 2008) (internal quotations and citations omitted).  And, as the Magistrate Judge noted, the Defendant does not challenge the voluntariness or validity of his consent, only the scope of it.  (Doc. 348 at 6).

Even if the Defendant's consent was limited to a search of the vehicle for weapons, the Defendant did not place any limits on where in the vehicle the officer could search for weapons and did not stop or withdraw his consent while he watched SSA Mashburn search his vehicle and trunk. (Doc. 310 at 89).  As the Magistrate Judge correctly explained, a "'general consent to search *for specific items* includes consent to search any compartment or container that might reasonably contain those items.'" (Doc. 348 at 6) (quoting *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999) (emphasis added); *see also United States v. Burwell*, 763 F. App'x 840, 849 (11th Cir. 2019) (same). The court agrees with the Magistrate Judge that "SSA Mashburn's search of the backpack [in the trunk] did not exceed the scope of consent" because "SSA Mashburn could reasonably have found a weapon in the backpack" located in the trunk.  (Doc. 348 at 5-6).   The Magistrate Judge correctly

5

found that the search of the backpack was reasonable and that "the evidence seized pursuant to the search of the backpack should not be suppressed." (Doc. 348 at 6). The Court OVERRULES the Defendant's objections on this issue.

The Defendant also objects to the Magistrate Judge's legal finding that during the search of the vehicle for weapons, probable cause developed to search the vehicle for drugs. (Doc. 376 at 13). However, the Defendant did not object to the Magistrate's Judge's factual finding that "SSA Mashburn began his search in the driver area of the vehicle, where he observed what appeared to be marijuana 'shake' in the floor." (Doc. 348 at 3; *see also* Doc. 376 at 1; Doc. 310 at 60). Attempting to distinguish the cases relied upon by the Magistrate Judge on this issue, the Defendant argues that because SSA Mashburn did not conduct a field test of the marijuana shake or have a drug canine alert that the shake was in fact marijuana, he could not be sure that it was marijuana shake, and the shake could not constitute probable cause for SSA Mashburn to search the vehicle for drugs. (Doc. 376 at 14-16). He also argues that "there was nothing immediately apparent to reflect that the alleged shake was marijuana" for the shake to constitute probable cause under the plain view doctrine. (Doc. 376 at 17-18). The court disagrees.

Probable cause as it relates to the plain view doctrine does not require that an "'officer be 'sure' or 'certain'" of the incriminating nature of an item, "but only that the facts available to a reasonably cautious man would warrant a belief that certain

6

items" may be incriminating evidence. *United States v. Garner,* 907 F.2d 60, 62 (8th Cir.1990) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).  As the Supreme Court has explained,

> probable cause is a flexible, common-sense standard.  It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.  A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Brown*, 460 U.S. at 742; *see also United States v. Gordon*, No. 205-CR-290-WKW, 2007 WL 710094, at *4 (M.D. Ala. Mar. 6, 2007), *aff'd*, 294 F. App'x 579 (11th Cir. 2008).

Here, SSA Mashburn's observation of what, in his years of experience, was marijuana shake in plain view on the floorboard established probable cause to search the vehicle for drugs.  SSA Mashburn testified that he had investigated drug crimes in special operations for 15 years. (Doc. 310 at 56).  He testified that he was familiar with what marijuana looks like, had encountered marijuana "thousands" of times during his career, and could recognize marijuana residue or shake. (Doc. 310 at 56-57).  He explained that marijuana shake was "crumbs or leftovers when someone will either take a cigarette roll or a prefilled blunt[,] and they'll gut a blunt and the tobacco will fall out[,] or they'll discard the tobacco[,] and they will reroll marijuana

7

into the blunt or cigarillo." (Doc. 310 at 57). SSA Mashburn explained that marijuana shake was "commonly found inside of vehicles where people smoke marijuana" and "in the floor of vehicles where people would roll up a marijuana blunt or cigarette." (Doc. 310 at 57). SSA Mashburn testified that he had seen marijuana shake or residue in vehicles over the course of his career. (Doc. 310 at 58).

SSA Mashburn testified that during his search of the Defendant's vehicle, he found what appeared to be "marijuana shake and stems from marijuana" ground up where the floor mat connected to the carpet on the driver's side floorboard, a cigarillo box, and "[l]oose marijuana" and tobacco "throughout the vehicle, consistent with "removing tobacco from certain types of tobacco products and replacing it with marijuana." (Doc. 310 at 60, 62-63, 89). Based on a *de novo* review of the record and applicable case law, the court agrees with the Magistrate Judge that SSA Mashburn's observation of what he reasonably believed to be marijuana shake in plain view on the floorboard was sufficient to establish probable cause to search the vehicle for drugs. (Doc. 348 at 7). The court also agrees with the Magistrate Judge that because SSA Mashburn "could reasonably have found drugs in the zipper pouch inside of the lunchbox, his search of the zipper pouch was reasonable" and that the marijuana shake in plain view on the floorboard "provides an alternative justification

for the search of the backpack in the trunk." (Doc. 348 at 7).  Therefore, the court OVERRULES the Defendant's objections on this issue.

After careful review of the entire file, including the transcript of the motion to suppress hearing and all hearing exhibits, and upon consideration of the recommendation of the Magistrate Judge, the court **OVERRULES** the Defendant's objections (doc. 376), **ADOPTS** the recommendation of the Magistrate Judge (doc. 348), and **DENIES** the Defendant's motion to suppress (docs. 253, 292)**.**

The Court DIRECTS the Clerk of Court to term the gavels at documents 253, 292, and 348.

**DONE** and **ORDERED** on this the 23rd day of March, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE

9